UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20585-CIV-LENARD/GOODMAN

ROBERT BENNER,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,

    Defendant.

_____/

REPORT AND RECOMMENDATIONS ON DEFENDANT'S *DAUBERT* MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS FRANK A. FORE

Defendant NCL (Bahamas) Ltd. filed a *Daubert* Motion to Strike Plaintiff's Expert Witness Frank A. Fore. [ECF No. 60]. Plaintiff Robert Benner filed a response in opposition [ECF No. 90], and NCL filed a reply [ECF No. 103]. United States District Judge Joan A. Lenard referred the motion to the Undersigned. [ECF No. 61]. The Undersigned **respectfully recommends** that the District Court grant in part and deny in part NCL's motion for the reasons outlined below.

**Factual Background**

Plaintiff, a 74-year old disabled right-leg amputee, was a passenger on NCL's M/*S Norwegian Epic*. He used a three-wheeled electric mobility scooter to travel around the vessel. While on his scooter, Benner tried to pass through an automatic sliding glass door and the scooter became stuck. With the assistance of fellow passengers, Plaintiff was able to get through the door. Shortly thereafter, Plaintiff traveled in a rightward

arc, the scooter tipped over, Plaintiff fell with the scooter, and he was ultimately injured.

Plaintiff designated Frank Fore, a mechanical engineer who assessed the location and causes of the incident, as an expert. In his report, Fore provided the following opinions:

> 1. The above-quoted regulations, codes, standards, guidelines, and recommendations are published by well-respected national and international safety organizations, including the International Maritime Organization ("IMO"), National Fire Protection Association ("NFPA"), the American Society for Testing and Materials ("ASTM") and the United States Access Board. The regulations and standards in question represent generally-accepted and widely followed rules that are designed [to] promote the safety of circulation pathways and doorways in public venues, including maritime.
>
> 2. The abrupt and untreated vertical change in pathway elevation presented by the inside of the doorway threshold in question represents a known safety hazard that presents a dangerous and unnecessary obstacle to pedestrians on foot and those who rely upon wheelchairs and electric scooters for mobility.
>
> 3. The abrupt and untreated vertical change in pathway elevation presented by the doorway threshold in question is out of compliance with the aforementioned safety regulations, codes, standards, guidelines, and recommendations that require treatment to ease abrupt vertical changes in pathway elevation above a certain height and/or that prohibit obstacles in accessible/escape routes aboard large passenger vessels.
>
> 4. It was and is technically feasible to have the subject doorway threshold flush with the adjoining deck surfaces on both sides, as was done elsewhere on the same vessel[.] Indeed, the subject doorway threshold is flush with the outside decking.
>
> 5. The abrupt and untreated vertical change in pathway elevation presented by inside of the doorway threshold in question was and is fully

capable of arresting the forward movement of a foot or the wheel(s) of a wheelchair or mobility scooter; as it did in this case.

6. The action by fellow passengers to push and dislodge the scooter from the raised doorway threshold was a decisive component of the tip-over moment.

7. The abrupt and unnecessary vertical change in pathway elevation presented by the raised doorway threshold in question was a substantial contributing cause of the mishap in question because, absent the obstruction presented, the scooter would have negotiated the subject doorway and ramp under conditions and typical velocities that would have been insufficient to create a tip-over moment.

[ECF No. 60-2, p. 21 (Fore's expert report)].

In reaching these opinions, Fore "inspected, measured, and photographed the subject scooter and the incident location." He also reviewed various other materials, including videos of the incident, the scooter manual, and safety regulations, codes, standards, guidelines, and recommendations.

NCL has moved to entirely exclude Fore as an expert. [ECF No. 60]. NCL does not challenge Fore's qualifications but contends that (1) Fore's opinions are based on unreliable methodology and (2) will not assist the trier of fact.

**Legal Standard for Expert Testimony**

The admission of expert testimony is governed by Federal Rule of Evidence 702, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function

"to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

> Rule 702 provides that:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry and considers whether (1) the expert is qualified to testify competently, (2) the methodology used to reach the conclusions is sufficiently reliable, and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993) (citing, inter alia, *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)).

"To warrant or permit the use of expert testimony, two conditions must be met: first, the subject matter must be closely related to a particular profession, business or

science and not within the common knowledge of the average layman; second, the witness must have such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Faircloth v. Lamb-Grays Harbor Co.*, 467 F.2d 685, 694 (5th Cir. 1972) (internal quotation omitted).

**Analysis**

As noted above, NCL challenges Fore's opinions by questioning the reliability of the methodology he used and the opinions' helpfulness to the jury.

*A. Reliability of the expert's methodology*

Reliability requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *Rink*, 400 F.3d at 1292.

These factors, however, are non-exhaustive. *Kumho Tire*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to

reach a particular result." *Rink*, 400 F.3d at 1293 n.7 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)). The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *Frazier*, 387 F.3d 1244.

NCL contends that Fore's opinions are not reliable because he first made a hypothesis, without having even seen the video footage, and then worked backwards to "fill the gaps to support his conclusions." Also, NCL argues that Fore failed to consider "plausible alternative explanations."

In his expert report, Fore explains his methodology:

> This process involves hypothesizing the plausible alternative explanations presented by the human-equipment interface in question and then taking into account the relevant literature and equipment performance standards, evaluating the known physical evidence, visiting accident scenes, interviewing available witnesses, if any - to see if conclusions can [be] reached to a reasonable degree of probability.

[ECF No. 60-2, p. 4].

NCL's contention that Fore's methodology is unreliable because he reached a conclusion and then filled in the gaps is at odds with the very explanation of his methodology -- the scientific method. Fore formulated a hypothesis and then looked for evidence to either support **or discount** that hypothesis. Fore tested his hypothesis by engaging in a thorough, methodical investigation in order to reach his conclusions.

For example, he identified and quoted safety standards applicable to circulation pathways and doorways in public venues, including maritime, and which were issued by respected organizations such as International Maritime Organization (IMO),

American Society for Testing and Materials (ASTM), National Fire Protection Association (NFPA), and United States Access Board. [ECF No. 60-2, pp. 5-8]. Fore reviewed scientific and technical literature. Additionally, Fore inspected, measured, and photographed the scene of the incident and the subject scooter. [ECF No. 60-2, pp. 8-13]. Fore also watched three videos of the incident. Then, to test his hypothesis and formulate his opinions, he used the information he gathered to calculate, using various equations, the components of scooter velocity at the tip-over moment.

It is clear that Fore engaged in an adequate scientific investigation of the incident itself, further supported by relevant scientific literature and vessel regulations. NCL's argument that Fore made certain calculated determinations to prove a predetermined theory -- such as the amount of force applied to the scooter by the passengers that assisted Plaintiff with dislodging his scooter and how this increased its velocity to a level that caused the scooter to tip over -- does not undermine the methodology enough to justify full exclusion of Fore's opinions.

Additionally, the allegation that Fore formulated his hypothesis without first viewing the video is unfounded. In his deposition, Fore testified that he believes he formed his hypothesis *after* viewing the video. [ECF No. 60-3, pp. 150-51 (Fore's deposition transcript)]. These deposition pages, which are the ones to which NCL cites, do *not* indicate that he formulated his hypothesis before watching the videos.

To the extent NCL argues that Fore failed to consider "plausible alternative explanations" as required by his chosen methodology, the Undersigned does not find Fore's lack of testing other hypotheses to justify a conclusion that his opinions lack reliable methodology. As previously stated, Fore appears to have engaged in a thorough, methodical investigation in order to reach his conclusions.

NCL can, if it so chooses, use the alleged failure to test other hypotheses or to use other numbers in his velocity calculations to challenge the *weight* of Fore's expert opinions. Certainly, NCL can bring out any deficiencies in Fore's methodology through cross-examination. Accordingly, the Undersigned finds that Fore based his opinions on sufficiently reliable methodology.

*B. Helpfulness to the trier of fact*

Expert testimony is admissible "if it concerns matters that are beyond the understanding of the average lay person." *Whelan*, 976 F. Supp. 2d at 1327 (quoting *Frazier*, 387 F.3d at 1244). Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves. *Id*. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005).

NCL argues that Fore's opinions are unhelpful to the trier of fact because he reached most of his opinions by simply watching the surveillance videos and by speculating. NCL contends that the jury can determine on its own whether the passengers pushed Plaintiff. In support of this request to find Fore's opinions unhelpful to the jury, NCL only highlights and argues that Fore concluded (1) that the passengers "pushed" (and not "lifted") Plaintiff through the doorway threshold by watching the video and (2) that crewmembers have experience "lifting" (instead of "pushing") wheelchairs through the doorway threshold based on his observations of crewmembers.

The Undersigned finds that those portions of Fore's testimony concerning the passengers "pushing" Plaintiff through the door are unhelpful. The jury can determine on its own whether the passengers pushed Plaintiff by viewing the videos themselves. However, this requires exclusion only of Fore's finding that the passengers indeed *pushed* Plaintiff through the door. Fore **can** provide an opinion that the passengers' actions, whatever they were (be it pushing, lifting or some other action), were in fact a *decisive factor* in Plaintiff's fall.

However, the Undersigned finds that Fore's testimony about crewmembers appearing to be experienced with "lifting" wheelchairs through similar doors on the vessel is also not helpful to the jury. Fore, at his deposition, states that a person can tell that crewmembers encounter this situation "all the time" and lift the wheels over the

9

threshold because he observed a crewmember do it "without even hesitation because he's done it so many times, you can *tell* he's used to it." [ECF No. 60-3, p. 183] (emphasis added). However, when asked whether he knows this for certain, Fore clarified that it just appears that way. In addition to admitting that he is not certain on this point, Fore is also not qualified to determine a person's experience based on his or her body language. Accordingly, the District Court should prevent Fore from testifying about crewmembers being experienced with "lifting" wheelchairs through the door. However, Fore may testify about his *observation* that crewmembers did in fact "lift" other wheelchairs to pass through the doorway.

These are the only portions of Fore's opinions which NCL contends are unhelpful to the jury, even though NCL is seeking to entirely exclude him as an expert. Regardless, beyond those limited areas, the Undersigned finds that Fore's testimony would be helpful to the jury. Accordingly, the Undersigned **respectfully recommends** that the District Court exclude Fore's testimony about the passengers allegedly "pushing" Plaintiff and about the crewmembers' purported experience and familiarity with pushing and pulling passenger wheelchairs.

## Conclusion

The Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** NCL's *Daubert* motion to exclude Fore as outlined above.

**Objections**

The parties have 7 days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court. Each party may file a response to the other party's objection within 5 days of the objection.[1] Failure to timely file objections shall bar the parties from a de novo determination by the District Court of an issue covered in this Report and Recommendations and bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on April 8, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Joan A. Lenard
All Counsel of Record

---

[1] The Undersigned is authorized to shorten the deadlines for the objections and responses, and I am doing that here because the motion has been thoroughly briefed.